**ESTATE OF RALSTON et al.**

v.

**METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,
Appellant;  National Car Rental Systems, Inc., Appellee.**

[Cite as *Estate of Ralston v. Metro. Prop. & Cas. Ins.
Co.,* 146 Ohio App.3d 630, 2001-Ohio-3478.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99 CA 305.

Decided Dec. 19, 2001.

John Dellick, for appellant.

Romney Cullers, for appellee.

VUKOVICH, Presiding Judge.

{¶ 1}   Third-party plaintiff-appellant Metropolitan Property and Casualty Insurance Company appeals from the decision of the Mahoning County Common Pleas Court, which granted summary judgment in favor of third-party defendant-appellee National Car Rental System, Inc. The issue before us is whether a rental car agency must provide underinsured motorist coverage where (1) the agency is self-insured, (2) the car was rented in Pennsylvania but wrecked in Ohio, (3) the driver was not offered underinsured motorist coverage at the time of rental, and (4) the rental agreement stated that liability insurance was provided but that underinsured motorist coverage would be provided only if the state of the accident mandates nonrejectable coverage.   For the following reasons, the judgment of the trial court is affirmed.

## STATEMENT OF FACTS

{¶ 2}   On July 22, 1990, James Ralston (the original plaintiff in this lawsuit) arrived at the airport in Pittsburgh with his coworker, who rented a car from National.   The rental agreement categorized a fellow employee who drives the vehicle for business purposes as an authorized driver.   The agreement explained that collision insurance could be purchased as an option.   It then disclosed that liability insurance would be provided automatically to the authorized driver up to the minimum limits of liability required in the state of the accident.   Under this

same disclosure, the agreement stated that uninsured, underinsured, and no-fault coverages are not provided unless they are required to be provided by applicable law and cannot be rejected.

{¶ 3}  After leaving the airport, the rental car was driven to Youngstown, Ohio. On August 18, 1990, the rental car was hit by an underinsured tortfeasor, and Ralston suffered injuries.  Ralston and his wife sued the tortfeasor and exhausted the limits of the tortfeasor's policy.  They then sued Metropolitan, their own underinsured motorist carrier.  Before settling with its insureds, Metropolitan filed a third-party complaint against National, claiming that National must provide primary coverage as to the underinsured motorist claim.  Metropolitan sought reimbursement from National in the amount of $25,000, $12,500 for Mr. Ralston and $12,500 for Mrs. Ralston.

{¶ 4}  Metropolitan and National filed cross-motions for summary judgment on the issue of National's obligation to provide underinsured motorist coverage. Most of the above facts were stipulated.  As for the issues of law, National originally insisted that Pennsylvania law must be applied to determine issues such as whether it was a self-insurer;  whether a self-insurer must offer underinsured coverage;  and whether, if it was not acting as a self-insurer, it was required to offer underinsured motorist coverage and then provide coverage as a result of a failure to abide by mandatory offering laws.  It was basically conceded that, under the language of the contract, the law of Ohio, as the state of accident, applied to determine the minimum amounts of liability coverage and whether underinsured coverage was rejectable.

{¶ 5}  Metropolitan read the rental agreement as providing underinsured coverage in this case because there was no written and signed rejection of the coverage and in Ohio such coverage must be provided by the liability insurer unless the insured signed a written rejection.  Metropolitan also insisted that Ohio law applied across the entire case.  National stated that even if Ohio law applied across the board, it was still not required to offer or provide underinsured motorist coverage under Ohio law because it was self-insured.  National also pointed out that no policy was delivered or issued for delivery in Ohio for a car that was registered or principally garaged in Ohio, which is a prerequisite for Ohio's mandatory offering statute.  In a later responsive filing, National basically agreed to allow Ohio law to apply to the entire case.

{¶ 6}  On October 27, 1999, the trial court overruled Metropolitan's motion for summary judgment and instead granted summary judgment in favor of National. Metropolitan filed timely notice of appeal and briefed the following assignments of error:

{¶ 7}  "By disregarding that National had contractually agreed to provide underinsured motorist coverage in its contract and by disregarding that National

neither had a valid exclusion of such coverage nor obtained a written and knowingly-made waiver of such coverage, the trial court erred when it granted National's motion for summary judgment and denied Metropolitan's motion for partial summary judgment."

{¶ 8} "By disregarding that National placed itself in the position of a liability insurer, by disregarding the trend in Ohio Supreme Court case law favoring liberal construction finding underinsured motorist coverage and by disregarding the only Ohio case law on point, the trial court erred when it granted National's motion for summary judgment and denied Metropolitan's motion for partial summary judgment."

{¶ 9} For organizational purposes, these assignments shall be addressed out of order and shall be subdivided into each issue that must be analyzed in coming to a decision as a matter of law.

### APPLICABLE LAW ON MINIMUM LIMITS v. APPLICABLE LAW ON OFFERING COVERAGE

■ {¶ 10} Under the plain language of the rental agreement, the law of the state of the accident is utilized to determine the minimum limits of liability, uninsured, underinsured, and no-fault coverages. However, the language specifies that coverage for uninsured, underinsured, and no fault are only provided if the state of the accident requires their provision, i.e., they are not rejectable. National automatically provides this potential coverage to all rented vehicles and their authorized drivers, unlike collision insurance, which must be purchased separately. The intent behind these agreement provisions is to ensure that all vehicles owned by National carry the minimum coverage and thus do not violate the insurance laws of whatever state in which a rented vehicle happens to travel. See *Ohayon v. Safeco Ins. Co. of Illinois* (2001), 91 Ohio St.3d 474, 485, 747 N.E.2d 206.

■ {¶ 11} Contrary to the assertions of Metropolitan, these contractual provisions do not constitute a choice-of-law provision in the sense of declaring what state's law will apply to determine whether National violated some type of mandatory offering law. See id. In fact, even if the contract purported to do this, it would not be enforceable, as it would directly violate the insurance laws of both Ohio and Pennsylvania, each of which prescribes that a mandatory offering law applies to automobile liability policies delivered or issued for delivery in their state for automobiles registered or principally garaged in their state. R.C. 3937.18; 75 Pa.C.S. 1731. This statutory law cannot be disregarded by an insurance company's insertion of choice-of-law language into a liability policy; such an interpretation would nullify the whole purpose of the uninsured/underinsured mandatory offering laws. See *Schulke Radio Prod., Ltd. v. Midwestern*

*Broadcasting Co.* (1983), 6 Ohio St.3d 436, 6 OBR 480, 453 N.E.2d 683, citing Restatement of Conflict of Laws, Section 187 (which refuses to apply the law expressly chosen in a contract if application of that law would be contrary to a fundamental policy of the state with a greater interest).

{¶ 12} Before delving further into the issue, we must point out that it is irrelevant that National eventually agreed that Ohio law would apply to the entire case. The reason behind this irrelevancy is that litigants may not generally stipulate as to what the law requires. Stipulations on legal conclusions are not binding on the court. *Hollobaugh v. D & V. Trucking* (May 8, 2001), Mahoning App. No. 99CA303, at 4, 2001 WL 537058. See, also, *Chas. Todd Corp., Inc. v. Rosemont Indus., Inc.* (1990), 66 Ohio App.3d 691, 693, 586 N.E.2d 139. Besides turning to case law for this proposition, we point the parties to Civ.R. 56(C), which mentions that the court may consider *stipulations of fact* in granting summary judgment. This rule then warns that no stipulation may be considered except as stated therein. Therefore, this court, which reviews the decision on summary judgment de novo, must initially determine what state's law is applicable to the issue of whether National was required to offer or provide underinsured coverage to its renters.

{¶ 13} An insurance coverage case, such as where the court must determine the nature and extent of the parties' rights and duties regarding uninsured motorist issues, is a contract matter and requires a contractual choice-of-law analysis rather than a tort choice-of-law analysis. *Ohayon*, 91 Ohio St.3d at 483, 747 N.E.2d 206. Similar to the rental agreement in our case, the Safeco policy in *Ohayon* provided coverage up to the minimum limits of the state of the accident for all types of compulsory coverages in that state. The court noted that the purpose of this language was so as not to violate the law of another state. Id. at 485, 747 N.E.2d 206. The court also explained that the provision is not an express choice of law to be applied by courts in an action for uninsured motorist coverage. Id. (noting that Ohio uses the factors from Section 188 of the Restatement of Conflict of Laws where there is not an express choice-of-law provision). In *Ohayon*, the accident occurred in Pennsylvania, but the insurance contract was executed and delivered in Ohio to an Ohio resident by an Ohio agent for a car that was principally garaged in Ohio. Under a tort law analysis, the law of the place of the accident would be more relevant; however, under a contractual analysis, it is the law of the place of contracting that generally prevails. Id. (applying Ohio law as the place of contracting, rather than Pennsylvania law as the place of injury).

{¶ 14} In the case at bar, the car was rented from National's office in Pennsylvania; thus, the rental agreement was entered into in Pennsylvania. The

car was registered and licensed in Pennsylvania, picked up by the renter in Pennsylvania, and returned by the renter to Pennsylvania. Ralston and his coworker were not residents of Ohio or Pennsylvania. The affidavit of a technical specialist at National stated that the vehicle was principally garaged in Pennsylvania prior to being rented by Ralston's coworker.

{¶ 15} Metropolitan attempts to argue that the car became principally garaged in Ohio when Ralston's coworker drove it there and kept it there for less than a month. However, this analysis fails. The issue is the state in which the vehicle was principally garaged at the time of contracting, not at the time of any subsequent accident. See, e.g., *McGuire v. Mills* (Aug. 30, 1999), Ross App. No. 98CA2462, at 12, 1999 WL 685873 (finding that Minnesota law applied as the state of contracting and noting that the plaintiff failed to present evidence that the car was principally garaged in Ohio at the time the policy was issued). The plain language of R.C. 3937.18(A) requires the insurer to offer underinsured coverage at the time of contracting. *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 29, 723 N.E.2d 97. Before this mandatory offering law applies, the car to be covered must be registered or principally garaged in Ohio when the policy is being delivered or issued.

{¶ 16} In conclusion, Pennsylvania law is applicable to every issue in this case except the issue of the minimum limits of liability in the state of the accident and the determination of whether underinsured coverage is rejectable in that same state. Underinsured motorist coverage is rejectable in Ohio. Thus, National is not obligated to provide underinsured motorist coverage under the rental agreement alone. As for Metropolitan's argument that it is only rejectable in Ohio if the insurer offered it and the insured signed a written waiver, this rule applies only to policies delivered or issued for delivery for vehicles registered or principally garaged in Ohio. Nonetheless, our analysis does not end merely because Ohio's financial responsibility laws do not apply to the issue of mandatory offering. Rather, this leads us to the application of Pennsylvania's law. (As an aside, as will be seen below, the result will be the same under either state's law under the facts and circumstances of this case.)

## PENNSYLVANIA LAW ON MANDATORY OFFERING

{¶ 17} Pennsylvania has a mandatory offering law similar to the law of Ohio. The insurer must offer uninsured and underinsured coverage to its insured when delivering or issuing a liability policy for a car registered or principally garaged in Pennsylvania. 75 Pa.C.S. 1731(a). In order to reject these coverages, the insured must sign a written rejection. 75 Pa.C.S. 1731(b) and (c). Thus, an insurer must provide underinsured motorist coverage to an insured if the insurer previously failed to offer it when selling the policy and failed to obtain a written

rejection. We note that this is also true under Ohio law. *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 567–569, 669 N.E.2d 824.

{¶ 18} Because National failed to offer underinsured motorist coverage to Ralston's coworker or obtain a written rejection of such coverage, Metropolitan contends that the coverage arose by operation of law. However, National contests this automatic coverage by pointing out that it is a self-insured entity which automatically provided liability insurance to authorized drivers of its cars so that its cars met the minimum requirements of the law of every possible state.

## SELF INSURERS

{¶ 19} According to the affidavit of National's technical specialist, National is a certified self-insurer in Pennsylvania. National is also a certified self-insurer in Ohio, and because the parties agreed that Ohio law applied, it submitted a certified copy of its certificate of self-insurance from Ohio. In both Ohio and Pennsylvania the mandatory offering and written rejection laws do not apply to self-insurers. *Hackenberg v. S.E. Pennsylvania Transp. Auth.* (1991), 526 Pa. 358, 365, 586 A.2d 879; *Grange Mut. Cas. Co. v. Refiners Transp. & Terminal Corp.* (1986), 21 Ohio St.3d 47, 48–49, 21 OBR 331, 487 N.E.2d 310 (advising that the General Assembly would have to amend the code to make employers obligated to provide uninsured motorist coverage to their employees). Separate code sections apply to self-insurers. See 75 Pa.C.S. 1787; R.C. 4509.45 and 4509.72. In Ohio, self-insurers need not supply uninsured or underinsured motorist coverage. *Grange*, 21 Ohio St.3d at 48–49, 21 OBR 331, 487 N.E.2d 310; *Am. States Ins. Co. v. Hertz Corp.* (Dec. 31, 1987), Mahoning App. No. 87CA20, at 2, 1987 WL 32983 (holding that the rental car agency acted as a self-insurer on the cars it rented to the public and thus it was not required by law to provide uninsured motorist coverage to drivers). In Pennsylvania, a self-insurer must supply uninsured motorist coverage but need not supply underinsured motorist coverage. 75 Pa.C.S. 1787; *Hackenberg*, 526 Pa. at 365, 586 A.2d 879.

{¶ 20} Metropolitan does not dispute that National is a certified self-insurer in those states. Instead, Metropolitan argues that it is a self-insurer only with regard to vehicles crashed by its own employees. Metropolitan contends that when the vehicle is leased, National becomes a liability insurer subject to mandatory offering laws.

{¶ 21} The language in the mandatory offering statutes of both Ohio and Pennsylvania establishes application only to liability policies being "delivered or issued for delivery." 75 Pa.C.S. 1731 and R.C. 3937.18. A self-insurer does not deliver or issue a liability policy by informing a lessor that liability coverage is

preexisting so that the vehicle is potentially in compliance with the insurance laws of all states. *Gutman v. Worldwide Ins. Co.* (1993), 428 Pa.Super. 309, 312, 630 A.2d 1263 (noting that there is no policy of insurance and no need to sign a waiver in the case of a rental car agency that is self-insured). See, also, *Lonesathirath v. Avis Rent A Car Sys.* (E.D.Pa.1995), 937 F.Supp. 367, 372 (noting that with a self-insured rental car company, there is no policy to deliver or issue and thus the mandatory offering law does not apply). As can be gleaned from these Pennsylvania cases, the self-insurer characterization includes more than just an employer/employee scenario.

{¶ 22} Whether a rental car agency is a self-insurer or a company that buys insurance for its cars from an insurance company, when the agency merely informs drivers that they are covered, the agency does not deliver or issue a policy nor does it act as an insurer. See, e.g., *Triplett v. Liberty Mut. Ins. Co.* (Nov. 9, 2000), Lucas App. No. L–99–1340, 2000 WL 1675509 (refusing to provide underinsured motorist coverage to a lessor of a rental car where the insurer offered coverage and received a rejection of such coverage from the rental car agency whose cars it insures and thus indirectly holding that a rental car agency that provides insurance through a liability policy it purchased need not offer underinsured motorist coverage to lessees); *Been v. Empire Fire & Marine Ins. Co.* (Pa.Super.2000), 751 A.2d 238, 241 (stating that it is Budget Rental as the insured that must reject the coverage, not the driver/lessee). See, also, *Saunders v. Jenkins* (Pa.Super.1998), 717 A.2d 561, 564 (finding that Hertz need not comply with offer and rejection requirements for underinsured motorist coverage even if it offers it as an option). We note that the case of a rental car agency selling a liability policy to a lessee is not before us and may be a distinguishable scenario. See, e.g., *Tyler v. Kelley* (1994), 98 Ohio App.3d 444, 648 N.E.2d 881 (holding that a rental car agency becomes a liability insurer when it sells liability insurance to lessees and thus must offer uninsured and underinsured coverage and receive a written rejection or provide such coverages by operation of law).

{¶ 23} In conclusion, National was a self-insured entity. It provided liability coverage to authorized drivers of its vehicles. This coverage was automatic. There was not a separate charge as there was for other coverages such as collision. Self-insured entities informing drivers that they will be covered up to the minimum limits required by the state of the accident do not convert themselves into liability insurers that sell or issue insurance policies and that must comply with the mandatory offering laws. Accordingly, National was not required to offer underinsured motorist coverage to drivers under the self-insured statute, which requires only self-insurers to provide uninsured motorist coverage. See, e.g., *Hackenberg*, 526 Pa. at 365, 586 A.2d 879; *Ingalls v. Hertz* (1996), 453 Pa.Super. 415, 418, 683 A.2d 1252; *Jenkins v. Philadelphia* (1993), 423

Pa.Super. 588, 592, 621 A.2d 689. Further, under its rental agreement, National was required to provide underinsured motorist coverage only if the vehicle was involved in an accident in a state that had mandatory underinsured motorist coverage that could not be rejected by any means. In Ohio, the coverage is rejectable. In accordance, the trial court properly granted summary judgment in favor of National and against Metropolitan.

{¶ 24} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO and WAITE, JJ., concur.