OPINION
{¶ 1} Defendant-appellant, National Union Fire Insurance Company of Pittsburgh, PA (hereinafter, "National Union"), appeals the March 5, 2003, judgment of the Mercer County Court of Common Pleas, denying National Union's motion for summary judgment.
 {¶ 2} The procedural history and facts pertinent to the case at bar follow.
 {¶ 3} On January 27, 2000, plaintiff-appellee, Barbara Foster (hereinafter, "Foster") was injured in an automobile accident in Mercer County, Ohio. The accident was caused by the negligence of Jeremy Hilton ("Hilton"). When the accident occurred, Foster had a personal auto policy of insurance in effect with Motorists Insurance Company ("Motorist"). The Motorist personal auto policy listed Foster's 1994 Grand Am, the car she was operating at the time of the accident, as the only "covered auto" under the policy. The personal auto policy provides Foster with up to $100,000 of uninsured/underinsured ("UM/UIM") coverage. The tortfeasor, Hilton, had in effect a personal automobile liability policy issued by American Select Insurance Company with policy limits of $25,000. Pursuant to Hilton's policy limits, Foster settled her bodily injury claim against Hilton for $25,000.
 {¶ 4} At the time the accident occurred, Foster was employed by Miller House Assisted Living ("Miller House"). However, Foster makes no allegation that she was acting within the scope of her employment when the accident occurred. Miller House is owned by Assisted Living Concepts, Inc. ("Assisted Living"). Assisted Living had in effect and was listed as the "named insured" under a commercial auto policy of insurance issued by National Union with UM/UIM policy limits of one million dollars ($1,000,000).
 {¶ 5} Foster filed a complaint in the Mercer County Court of Common Pleas on April 26, 2001, seeking recovery for her uncompensated injuries under both Assisted Living's National Union commercial auto policy and her personal auto policy of insurance with Motorist. On December 20, 2001, both National Union and Motorist filed motions for summary judgment. National Union argued that the commercial auto policy it issued to Assisted Living was not subject to Ohio law, or in the alternative, if Ohio law applied, Foster was not occupying a covered auto at the time of the accident.
 {¶ 6} In its motion for summary judgment, Motorist argued that even though the personal auto policy expressly provided Foster with UM/UIM coverage, National Union's commercial auto policy provided primary UM/UIM coverage to Foster and, therefore, argued that its liability should be reduced on a pro-rata basis to reflect National Union's liability.
 {¶ 7} On March 5, 2003, the trial court found the following: (1) the language of the National Union policy defining "who is an insured" is ambiguous and, therefore, pursuant to Scott-Pontzerv. Liberty Fire Ins. Co. (1999), 85 Ohio St.3d 660, National Union's commercial auto policy issued to Assisted Living provides UM/UIM motorist coverage to Foster by operation of law with policy limits of one million dollars ($1,000,000) per accident; (2), the National Union commercial auto policy is governed by Ohio law because it provides for other than Texas automobiles and "specifically" includes Ohio automobiles, and; (3) the National Union policy and the Motorist personal auto policy should be applied on a pro rata basis such that Motorist is liable for one-eleventh (1/11) and National Union is liable for ten-elevenths (10/11) of Foster's damages.
 {¶ 8} Accordingly, the trial court granted Motorist's motion for summary judgment as to National Union's pro rata liability and denied National Union's motion for summary judgment. A final judgment entry was filed by the trial court on April 8, 2003.
 {¶ 9} National Union now appeals the March 5, 2003 judgment of the trial court denying its motion for summary judgment and sets forth one assignment of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in denying the motion for summaryjudgment of National Union Fire Insurance Company of Pittsburgh,PA.
 {¶ 10} An appellate court reviews a grant of summary judgment de novo. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment is proper if the evidence filed in a case shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Furthermore, summary judgment should be granted if "it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
Civ.R. 56(C).
 {¶ 11} National Union asserts that the trial court erred in finding that the commercial auto policy issued to Assisted Living is subject to Ohio law. Rather, National Union contends Texas law is applicable to the commercial auto policy in question. Contrarily, Foster maintains that Ohio law applies to the National Union policy and that she was entitled to UM/UIM coverage pursuant to the Ohio Supreme Court's holding inScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660.[1]
 {¶ 12} In order to determine choice of law issues in regards to application of insurance contracts, we look to Ohayon v.Safeco Ins. Co. of Illinois (2001), 91 Ohio St.3d 474. InOhayon, the Ohio Supreme Court held that an action by an insured against his or her insurance carrier for payment of UM/UIM coverage is a cause of action sounding in contract, rather than tort. Ohayon, supra, at paragraph one of the syllabus. Courts must, therefore, determine questions involving the nature and extent of the parties' rights and duties under an insurance contract's UIM provision by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971). Id., at paragraph two of the syllabus.
 {¶ 13} Section 187 of the Restatement provides that, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties. Id., at 477. A review of the record in the case sub judice indicates that the parties made no such express choice of law. Consequently, pursuant to Section 188 of the Restatement, the parties' rights and duties under the contract are determined by the law of the state that has "the most significant relationship to the transaction and the parties." Ohayon,91 Ohio St.3d at 477; (citation omitted). Section 188(2) of the Restatement provides that in making this determination, courts should consider:
(1) the place of contracting;
 (2) the place of negotiation;
 (3) the place of performance;
 (4) the location of the subject matter, and;
 (5) the domicile, residence, nationality, place ofincorporation, and place of business of the parties.
Id. The Ohio Supreme Court has further stated that the focus on these factors "will often correspond with the Restatement's view that the rights created by an insurance contract should be determined `by the law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless * * * some other state has a more significant relationship to the transaction and the parties.'" Id., at 479; quoting Restatement 188.
 {¶ 14} Foster argues that she is entitled to UM/UIM coverage by virtue of an "omnibus named insured" endorsement (# 003) to the National Union commercial auto policy which provides that "the named insured includes any and all past, present or hereinafter formed or acquired subsidiary companies, corporations * * * which are owned * * * or for which you are obligated to provide insurance." We acknowledge that by virtue of this endorsement, the commercial auto policy is modified to include Miller House as a named insured under the contract. This alone, however, is not determinative of whether Ohio or Texas law is applicable to the enforcement of the policy. We must further examine the policy and determine whether the Ohayon factors favor the application of Texas or Ohio law. See Reidling v.Meacham, 148 Ohio App.3d 86, 2002-Ohio-528 at ¶ 15.
 {¶ 15} In applying the Ohayon factors to the case sub judice, the record provides the following facts: (1) the contract was formed in Texas; (2) the commercial auto policy was negotiated in Texas; (3) the policy is comprised of Texas forms and was filed in the Texas Department of Insurance; (4) the policy lists only three automobiles as covered autos, all of which are listed as being located and principally garaged in Texas (a 1990 Cadillac, Deville, McKinney Texas; a 1992 Cadillac, Seville, Plano, Texas, and; a 1999 Dodge, Caravan, Nacogdoches, Texas);[2] (5) the declarations page of the commercial auto policy lists "Assisted Living Concepts" as the "named insured" and lists Assisted Living's address as: 3404 SW 5th Street, Plainview, Texas, and; (6) Assisted Living's principal place of business is Texas.
 {¶ 16} Under these circumstances, we find that the connection to Texas represents the "more significant relationship to the transaction and the parties." Humbert v. United Ohio Ins. Co. (2003) 154 Ohio App.3d 540, 2003-Ohio-4356, at ¶ 12. Pursuant toOhayon, we will, therefore, utilize Texas law to interpret the existence and extent of coverage provided by the National Union policy.[3] See, also, Humbert, supra.
 {¶ 17} Section "A" of the UM/UIM endorsement to the National Union commercial auto policy provides that:
 [National Union] will pay damages which an insured is legallyentitled to recover from the owner or operator of an uninsuredmotor vehicle because of bodily injury sustained by an insured,or property damage caused by an accident. The owner's oroperator's liability for these damages must arise out of theownership, maintenance or use of the uninsured motor vehicle.
Section C of the UM/UIM endorsement to the National Union business auto policy defines "who is an insured" as:
1. You and any "designated person" and any "family member" ofeither.
 2. Any other person "occupying" a "covered auto".
 3. Any person or organization for damages that person ororganization is entitled to recover because of "bodily injury"sustained by a person described in 1 or 2 above.
The business auto coverage form in the commercial auto policy provides that throughout the policy the words "you" and "your" refer to the "named insured shown in the declarations." "Assisted Living Concepts" is listed as the "named insured" in the declarations page.
 {¶ 18} Webster v. United States Fire Ins. Co. (1994),882 S.W.2d 569, a decision of the First District Court of Appeals of Texas, is the applicable Texas law to the case sub judice. InWebster, the court determined that an insurance policy is not ambiguous merely because it contains a corporate entity as a named insured and held that employees of a corporate named insured are not entitled to UM/UIM coverage for motor vehicle accidents that occur while acting outside the scope of their employment. Webster, 882 S.W.2d 569, 573. Simply stated, there is no Scott-Pontzer equivalent in Texas.
 {¶ 19} In the case sub judice, because Foster is not listed as a named insured and was not driving a covered automobile as listed in the business auto policy, she does not meet the definition of "who is an insured" for purposes of UM/UIM coverage under the National Union commercial auto policy. Furthermore, Foster has not alleged anywhere in the record, including her complaint, answer to National Union's motion for summary judgment, or her appellate brief, that she was acting within the scope of her employment when the accident occurred. Accordingly, pursuant to Texas law, Foster is not provided with UM/UIM coverage under National Union's commercial auto policy.
 {¶ 20} Moreover, National Union maintains if the only covered autos under a policy of insurance are registered or principally garaged in states other than Ohio, as is the case sub judice, Ohio R.C. 3937.18 is inapplicable to the policy of insurance.
 {¶ 21} R.C. 3937.18[4] provides that:
(A) No automobile liability or motor vehicle liability policyof insurance insuring against loss resulting from liabilityimposed by law for bodily injury or death suffered by any personarising out of the ownership, maintenance, or use of a motorvehicle shall be delivered or issued for delivery in this statewith respect to any motor vehicle registered or principallygaraged in this state unless both of the following coverages areoffered to persons insured under the policy * * *:
 (1) Uninsured motorist * * *.
 (2) Underinsured motorist coverage * * *.
 {¶ 22} Because National Union's commercial auto policy was not delivered, or issued for delivery, in Ohio and because the policy does not cover vehicles registered or principally garaged in Ohio, R.C. 3937.18 is inapplicable to the National Union policy. National Union was not, therefore, required to offer UM/UIM coverage in accordance with R.C. 3937.18, and UM/UIM insurance does not arise by operation of law to extend coverage to Foster in the case sub judice. See Henderson v. Lincoln Natl.Specialty Ins. Co., 68 Ohio St.3d 303, 1994-Ohio-100; De Uzhcav. Derham, 2nd Dist. App. No. 19106, 2002-Ohio-1814.
 {¶ 23} We, therefore, find that the trial court erred by denying National Union's motion for summary judgment, and National Union's assignment of error is sustained. In addition, because Foster is not entitled to UM/UIM coverage under the National Union commercial auto policy, National Union is not liable to share in the damages with Motorist on a pro rata basis. Accordingly, the trial court's grant of summary judgment to Motorist is vacated.
 {¶ 24} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Shaw, P.J. and Bryant, J., concur.
[1] The Ohio Supreme Court, in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, modified and limited its previous holding in Scott-Pontzer, supra, and held that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within thecourse and scope of employment." Galatis, supra, at paragraph two of the syllabus, emphasis added. Neither party to this appeal, however, has raised the issue of whether Foster was acting within the course and scope of her employment when the accident occurred.
[2] We note that National Union maintains that the commercial auto policy includes four covered auto by virtue of a "Fleet Schedule Endorsement" which lists a 1994 Ford Van principally garaged in Paris, Texas. This "Fleet Endorsement," however, has not been attached to the National Union commercial auto policy in the records submitted to this court and does not appear to be included in the policy. However, in reviewing the commercial auto policy in question, we find that the trial court erred in finding that the policy provides coverage "for other than Texas automobiles, and specifically include[es] Ohio automobiles." The commercial auto policy could only be construed to provide coverage for Ohio automobiles if Ohio law and Scott-Pontzer, supra, applied to create an ambiguity to extend coverage to the employees of Assisted Living and Miller House, discussed infra.
[3] Based upon this conclusion, it is not necessary for this court to consider the other arguments raised by National Union.
[4] Version S.B. No. 57, effective November 2, 1999.