[Cite as *Allstate Fire & Cas. Ins. Co. v. Moore*, 2013-Ohio-2262.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY,

      CASE NO.  13-12-50

    PLAINTIFF-APPELLEE,

    v.

BRUCE L. MOORE, ET AL.,          O P I N I O N

    DEFENDANTS-APPELLANTS.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11CV0187

Judgment Affirmed

Date of Decision:   June 3, 2013

APPEARANCES:

    *Keith G. Malick and Christopher J. Van Blargan*  for Appellants

    *Timothy P. Heather*  for Appellee

**PRESTON, P.J.**

{¶1} Defendants-appellants, Bruce L. and Elizabeth Moore ("the Moores"), appeal the Seneca County Court of Common Pleas' judgment granting summary declaratory judgment in favor of plaintiff-appellee, Allstate Fire & Casualty Insurance Company ("Allstate"). We affirm.

{¶2} This case arises out of an October 29, 2010 traffic accident. While riding his motor scooter on a road in Englewood, Florida, Mr. Moore was rear-ended by a vehicle driven by an underinsured motorist, Shaun Warren. (B. Moore Dep. at 6, 22, Doc. No. 29); (Complaint at ¶ 6, Doc. No. 2). Mr. Moore sustained bodily injury and spent four days in the hospital. (B. Moore Dep. at 26-27, Doc. No. 29). Mr. Warren's insurer paid the extent of its liability insurance coverage—$10,000. (*Id.* at 28-29); (Complaint at ¶ 7, Doc. No. 2).

{¶3} The Moores reside six months a year each at their homes in Tiffin, Ohio and Rotonda West, Florida. (B. Moore Dep. at 3-4, Doc. No. 29). They file their state income tax returns in Florida. (*Id.* at 4-5). At the time of the accident, the Moores owned a 1999 Ford Mustang ("Mustang"), a 2010 GMC Sierra 1500 ("Sierra"), and the motor scooter Mr. Moore was riding at the time of the accident. (*Id.* at 13). The Moores garaged the motor scooter year-round at their home in Florida. (*Id.* at 12). It was registered and licensed in Florida and insured under Motorcycle Insurance Policy No. 9 41 969590 10/17 ("Motorcycle Policy"),

issued in Florida by an Allstate agent. (B. Moore Aff. at ¶ 4-7, 9, Doc. No. 48, Ex. 1-B, attached). At the time of the accident, the Motorcycle Policy did not include uninsured/underinsured-motorist ("UM/UIM") coverage. (*Id.* at ¶ 7-10); (*Id.* at Declarations).

{¶4} The Moores insured the Sierra and Mustang under a different policy— Auto Policy No. 9 80 037690 11/13 ("Auto Policy") issued in Ohio by an Allstate agent. (B. Moore Aff. at ¶ 2-3, Doc. No. 48, Ex. 1-A, attached); (Welty Aff. at ¶ 4-6, Doc. No. 38, Ex. A); (Complaint at ¶ 2-3, Doc. No. 2, Ex. A). The Moores garaged the Sierra in Ohio for six months a year and in Florida for the remaining six months. (B. Moore Aff. at ¶ 3, Doc. No. 48, attached). The Moores garaged the Mustang in Florida year-round. (*Id.*). At the time of the accident, the Auto Policy included UM/UIM coverage up to $100,000 per person and $300,000 per accident and medical payment coverage up to $5,000. (Auto Policy at Declarations).

{¶5} After the accident, the Moores filed with Allstate underinsured motorist ("UIM") and medical payment claims under the Auto Policy. (Complaint at ¶ 8, Doc. No. 2). Allstate sent a formal coverage denial letter to the Moores' counsel and filed the underlying action, seeking a declaratory judgment that Allstate was not obligated to provide UIM or medical payment coverage to the Moores under the Auto Policy. (Complaint at ¶ 15-16, Doc. No. 2).

{¶6} The trial court granted Allstate's motion for leave to file its motion for summary judgment, in which Allstate argued, in relevant part,[1] that it was entitled to a summary judgment declaration that it had no duty to provide UIM coverage to the Moores because the Auto Policy's "other-owned auto" exclusion precluded coverage. (Doc. Nos. 35, 36, 37, 49). The Moores filed an opposition to Allstate's motion for summary judgment and a cross-motion for summary judgment, arguing that Florida law governed the policy, and that Allstate failed to demonstrate that it obtained from the Moores an informed, written acceptance of the other-owned auto exclusion to the Auto Policy's UM/UIM coverage, which Florida law requires for those exclusions to be valid. (Doc. Nos. 45, 46, 51). The Moores also argued that Allstate should be estopped from denying coverage based on the alleged misrepresentations of an employee of a Florida Allstate agent who allegedly told Mr. Moore that he did not need UM/UIM coverage on the Motorcycle Policy because he was covered under the Auto Policy's UM/UIM coverage while riding his motor scooter. (Doc. Nos. 45, 51).

---

[1] As required by the declaratory judgment statute, R.C. Chapter 2721, the trial court's final judgment entry expressly declared the parties' respective rights and obligations as to both the UIM claim and the medical payment claim. *See Palmer Bros. Concrete, Inc. v. Indus. Comm.*, 3d Dist. No. 13-05-28, 2006-Ohio-1659, ¶ 8. However, the Moores did not address the medical payment claim in their opposition to Allstate's motion for summary judgment. Nor do the Moores in their brief raise any assignments of error related to the medical payment claim. Each of these failures amounts to a waiver of any arguments related to the medical payment claim for purposes of appeal. *Cowan v. Interdyne Corp.*, 3d Dist. No. 1-12-26, 2013-Ohio-642, ¶ 27 ("A party's failure to raise an issue in response to an adverse party's motion for summary judgment waives that issue for purposes of an appeal." (citations and internal quotation marks omitted)); *State v. Bowsher*, 3d Dist. No. 14-07-32, 2009-Ohio-6524, ¶ 19 (Preston, P.J., dissenting) ("Errors not specifically raised and argued in the parties' briefs are considered waived for purposes of appeal. App.R. 12(A)."). Therefore, we do not address the medical payment claim in this opinion.

{¶7} After holding an oral hearing on the parties' motions for summary judgment, the trial court issued a final judgment entry on October 24, 2012, granting summary judgment in favor of Allstate and declaring that the Moores were not entitled to UIM coverage under the Auto Policy. (Doc. Nos. 39, 55). Specifically, the trial court held that Ohio law applied and that the Moores were not entitled to UIM coverage under the Auto Policy given the undisputed facts of the case. (Doc. No. 55). The trial court also held that it was not reasonable for the Moores to rely on the statement of a staffer of a Florida Allstate agent concerning the Moores' coverage under a policy issued from a separate agency in Ohio, particularly when the Auto Policy provided that it could be changed, with limited exception, only "by endorsement." (*Id.*).

{¶8} The Moores filed their notice of appeal on November 21, 2012. (Doc. No. 59). They raise three assignments of error for our review. We address the first and second assignments of error together, followed by the third assignment of error.

**Assignment of Error No. I**

**The trial court erred in holding that Ohio, rather than Florida, law governed interpretation of Allstate's Auto Policy and the Moores' underinsured motorist claim. [Judgment Entry, R.55].**

**Assignment of Error No. II**

**The trial court erred in holding that the Auto Policy's "other-owned auto" exclusion was enforceable and precluded coverage**

**for the Moore's [sic] underinsured motorist claim where its interpretation was governed by Florida law, and Allstate failed to present evidence that it fully complied with Florida's mandatory offer statute before including the exclusion within the Auto Policy. [Judgment Entry, R.55].**

{¶9} In their first and second assignments of error, the Moores argue that the trial court concluded erroneously that Ohio law governed the interpretation and application of the Auto Policy's other-owned auto exclusion. Specifically, the Moores argue that notwithstanding the Auto Policy's conditional choice of Ohio law, an analysis under Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971) demonstrates that Florida law governed the Auto Policy as to the Moores' claims arising from the accident. The Moores go on to argue that under a Florida statute—Fla.Stat. 627.727(9)—Allstate was required to obtain the Moores' informed, written acceptance of the other-owned auto exclusion included in the Auto Policy, and that because Allstate failed to present any evidence that it obtained the Moores' informed, written acceptance, it was not entitled to summary judgment.

{¶10} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the

non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶11} The threshold question a court must answer before engaging in a choice-of-law analysis is whether an actual conflict exists between Ohio law and the law of the other jurisdiction. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, paragraph one of the syllabus. In this case, we are required to perform a choice-of-law analysis if the Auto Policy's other-owned auto exclusion is invalid under Florida law, as the Moores argue, but valid under Ohio law. We find that to be the case, warranting a choice-of-law analysis.

{¶12} The Auto Policy's other-owned auto exclusion is found under the heading "Exclusions—What Is Not Covered" in Part 3, Section 1 of the Auto Policy, governing "Uninsured Motorists Insurance for Bodily Injury." (Auto Policy at 14-15). The other-owned auto exclusion states, in relevant part:

> **We** will not pay any damages an **insured person** or an **additional insured person** is legally entitled to recover because of **bodily injury**:
>
> * * *
>
> 2. while in, on, getting into or out of, getting on or off, or when struck by a **motor vehicle** owned by or available or furnished for the

regular use of **you** or a **resident** which is not insured for this coverage under this policy. (Emphasis sic.) (*Id.*)

Part 3, Section 3 of the Auto Policy defines "motor vehicle" as "a land motor vehicle or trailer other than:

a.      a vehicle or other equipment designed for use off public roads, while not on public roads,

b.      a vehicle operated on rails or crawler-treads, or

c.      a vehicle when used as a residence or premises."

(*Id.* at 18).

{¶13} Under R.C. 3937.18, other-owned auto exclusions such as the one in the Auto Policy are enforceable. *Tuohy v. Taylor*, 3d Dist. No. 4-06-23, 2007-Ohio-3597, ¶ 15, citing *Bailey v. Progressive Ins. Co.*, 6th Dist. No. H-03-043, 2004-Ohio-4853, ¶ 17-18. On the other hand, our review of Florida law suggests that if it applies, the Auto Policy's other-owned auto exclusion would be valid only if Allstate obtained the Moores' informed, written acceptance of the other-owned auto exclusion. Fla.Stat. 627.727(9)(d); *Omar v. Allstate Ins. Co.*, 632 So.2d 214, 216 (Fla.App.1994); *Stadelman v. Johnson*, 842 So.2d 1001, 1002-1003 (Fla.App.2003). Based on the record before us—which does not include an informed, written acceptance by the Moores—the other-owned auto exclusion

would be invalid under Florida law. Therefore, because there is an actual conflict between the law of Ohio and Florida, a choice-of-law analysis is warranted.

**{¶14}** We turn next to an analysis of the Auto Policy's choice-of-law provision, which is found under a "General Provisions" heading. It begins:

> **What Law Will Apply**
>
> This policy is issued in accordance with the laws of Ohio and covers property or risks principally located in Ohio. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of Ohio. (Auto Policy at 7).

The "following paragraph" reads:

> If a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside Ohio, claims or disputes regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this. (Emphasis sic.) (*Id.*).

{¶15} In other words, the Auto Policy's choice-of-law provision calls for a choice-of-law analysis if an out-of-state traffic accident amounts to either a "loss to the auto," a "covered auto accident," or "any other occurrence for which coverage applies." (*Id.* at 7). Allstate argues that a choice-of-law analysis is not warranted under the second paragraph of the Auto Policy's choice-of-law provision because Mr. Moore's motor scooter was not an "auto," which the Auto Policy defines as "a private passenger land motor vehicle, with at least four wheels designed for use on public roads." (*Id.* at 3). Allstate also argues that a choice-of-law analysis is not warranted because the traffic accident at issue was not "any other occurrence for which coverage applies" because Mr. Moore was operating an other-owned auto excluded under the Auto Policy.

{¶16} We need not address Allstate's first argument concerning the Auto Policy's definition of "auto" because Allstate's second argument assumes that the Auto Policy's other-owned auto exclusion is valid and enforceable in this case. The enforceability of the other-owned auto exclusion depends, however, on whether Ohio law or Florida law applies. If Ohio law applies, the other-owned auto exclusion would bar the Moores' claim. On the other hand, if Florida law applies, Allstate was required to obtain the Moores' informed, written acceptance of the other-owned auto exclusion in order for it to be valid. That is, if Florida law applies, and Allstate did not obtain the required acceptance, the other-owned auto

exclusion would be unenforceable and the traffic accident at issue in this case would amount to an "other occurrence for which coverage applies." The record before us does not include evidence of Allstate obtaining the required acceptance. Therefore, the second paragraph of the Auto Policy's choice-of-law provision does not preclude a choice-of-law analysis to address the enforceability of the other-owned auto exclusion in the first instance.

{¶17} "Choice of law provisions generally are enforceable." *Wells Fargo Bank v. Blough*, 4th Dist. No. 08CA49, 2009-Ohio-3672, ¶ 17, citing *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436 (1983), syllabus (adopting 1 Restatement of the Law 2d, Conflict of Laws, Section 187 (1971)). In *Schulke*, the Supreme Court set forth the following test to determine when a choice-of-law provision chosen by the parties is enforceable:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties. 6 Ohio St.3d 436, syllabus.

The Supreme Court in *Schulke* derived this test from and adopted Section 187 of 1 Restatement of the Law 2d, Conflict of Laws (1971), which provides that "subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties." *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 477 (2001). Section 187, as quoted by the Supreme Court in *Schulke*, reads:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a)   the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b)   application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. 6 Ohio St.3d at 438-439, quoting 1 Restatement of the Law 2d, Conflict of Laws, Section 187, at 561 (1971).

{¶18} Here, Section 187(2)(a) does not apply because Ohio has a substantial relationship to the parties, and there was a reasonable basis for the parties' choice of Ohio law. The Moores reside in Ohio six months a year, and Mr. Moore contacted an Ohio Allstate agent when shopping for an auto insurance policy. (B. Moore Dep. at 3-4, 17, Doc. No. 29). The Auto Policy was issued in Ohio by an Ohio Allstate agent. (Auto Policy at Declarations). The Auto Policy states that it "covers property or risks principally located in Ohio." (*Id.* at 7). For these reasons, Ohio has a substantial relationship to the Moores and Allstate, and there was a reasonable basis for their choice of Ohio law. *See Blough*, 2009-Ohio-3672, at ¶ 20, citing *Sekeres v. Arbaugh*, 31 Ohio St.3d 24, 25 (1987).

{¶19} Under Section 187(2)(b), "application of the law of the chosen state must not violate the fundamental policy of the state which (1) has a greater material interest in the determination of the issue, and (2) is the state whose law would be applied in the absence of a choice by the parties." *Sekeres*, 31 Ohio St.3d at 25. In other words, the application of Ohio law here must not violate the public policy of Florida, but only if Florida has a materially greater interest than Ohio in this matter, and only if Florida law would have governed in this case if the parties had not specified otherwise. *Id.* The Auto Policy's choice-of-law provision included a similar clause—another state's law would apply to a covered, out-of-state accident "only if the laws of that jurisdiction would apply in the

absence of a contractual choice of law provision such as this." (Auto Policy at 7). The next step in our analysis is, therefore, whether Florida law would have governed absent the Auto Policy's choice-of-law provision.

{¶20} Section 187(2)(b) directs us to the subsequent section of the Restatement, Section 188,[2] to analyze which state has "the most significant relationship to the transaction and the parties." *Ohayon*, 91 Ohio St.3d at 477, quoting 1 Restatement of the Law 2d, Conflict of Laws, Section 188(1), at 575 (1971) (internal quotation marks omitted). "To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Id.* "Further, the Supreme Court specified that 'Section 188's choice-of-law methodology focuses on the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile *of the contracting parties.*'" (Emphasis sic.) *Barrera v. Ins. Co. of State of Pennsylvania*, 3d Dist. No. 4-10-06, 2010-Ohio-4829, ¶ 17, quoting *Ohayon*, 91 Ohio St.3d at 479.

---

[2] Section 188 also contains the rule Ohio courts apply when parties do not include a choice-of-law provision in their contract. *Ohayon*, 91 Ohio St.3d at 477.

**{¶21}** The Supreme Court explained in *Ohayon* that "[i]n insurance cases, this focus will often correspond with the Restatement's view that the rights created by an insurance contract should be determined 'by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.'" (Emphasis sic.)  *Id.* at 479, quoting 1 Restatement of the Law 2d, Conflict of Laws, Section 193, at 610 (1971).  *See also Foster v. Motorists Ins. Co.*, 3d Dist. No. 10-03-07, 2004-Ohio-1049, ¶ 13.  "'[I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.'"  *Ohayon*, 91 Ohio St.3d at 479, quoting 1 Restatement of the Law 2d, Conflict of Laws, Section 193, Comment b (1971).  "The principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors—the location of the subject matter of the contract." *Id.*

**{¶22}** Here, an analysis of the Section 188 factors demonstrates that Ohio law, not Florida law, would have applied had Allstate and the Moores not contracted otherwise.  The place of contracting and place of negotiation was Ohio.[3]  (B. Moore Dep. at 17, Doc. No. 29); (Auto Policy at Declarations).  When

---

[3] Mr. Moore testified in his deposition that the Sierra is insured in Ohio and the Mustang is insured in Florida; however, he later acknowledged in an affidavit that both the Sierra and the Mustang are insured

shopping for insurance policies, Mr. Moore selected an Ohio Allstate agent who issued an Ohio insurance policy to the Moores. (*Id.*); (*Id.*). The place of performance of the Auto Policy was Ohio. *See Garcia v. Green*, 6th Dist. No. L-02-1351, 2003-Ohio-3841, ¶ 23 (noting that the place of performance of an insurance policy is the place of "the payment of insurance benefits"). The address listed for the Moores—the "named insured(s)" on the Auto Policy's declarations page—is the Moores' Tiffin, Ohio address, and Allstate would have sent any benefits payments there. (*See* Auto Policy at Declarations, 4, 8, 11, 19, 23). The Moores reside in Ohio and Florida six months a year each, the office of the Allstate agent who issued the Auto Policy is in Ohio, and Allstate's home office is in Illinois. (B. Moore Dep. at 3-4, Doc. No. 29); (B. Moore Aff. at ¶ 1, Doc. No. 48, attached); (Auto Policy at Declarations, 1).

**{¶23}** The parties' contract expressly addresses the most important factor—the principal location of the insured risk. The first sentence of the "What Law Will Apply" section says: "This policy is issued in accordance with the laws of Ohio and covers property or risks principally located in Ohio." (Auto Policy at 7). The Auto Policy's declarations page lists the Moores' Tiffin, Ohio address, followed by the two covered vehicles—the Mustang and the Sierra. (Auto Policy at Declarations). Judging by the Auto Policy, at the time of contracting, the

---

under the Auto Policy, which was issued in Ohio. (B. Moore Dep. at 16-17, 51, Doc. No. 29); (B. Moore Aff. at ¶ 2-3, Doc. No. 48, attached).

parties intended for the principal location of the insured risks to be Ohio. *See Estate of Ralston v. Metro. Prop. & Cas. Ins. Co.*, 146 Ohio App.3d 630, 2001-Ohio-3478, ¶ 15 (7th Dist.) ("The issue is the state in which the vehicle was principally garaged at the time of contracting, not at the time of any subsequent accident.").

{¶24} Nothing in the Auto Policy or in the record suggests that the parties understood that the principal location of the insured risks would be anywhere but Ohio. The fact that the Moores, at the time of the accident, garaged the Mustang in Florida year-round and the Sierra in Ohio and Florida equally each year does not affect the expectations of the parties at the time they entered into their contract, particularly when the contract contains an express statement concerning the principal location of the insured risks. (Auto Policy at 7). Allstate issued the Auto Policy to the Moores based on information they provided concerning their vehicles and place of residence. (*Id.* at 4). As we stated in *Humbert v. United Ohio Ins. Co.*, 154 Ohio App.3d 540, 2003-Ohio-4356 (3d Dist.), "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." *Id.* at ¶ 9, quoting 1 Restatement of the Law 2d, Conflict of Laws, Section 187, Comment e (internal quotation marks omitted).

*See also Reidling v. Meacham*, 148 Ohio App.3d 86, 2002-Ohio-528, ¶ 19-27 (6th Dist.).

{¶25} Under these circumstances, we conclude that the connection to Ohio represents the "more significant relationship to the transaction and the parties" under Section 188. *See Foster*, 2004-Ohio-1049, at ¶ 3, 15 (holding that Texas law, not Ohio law, applied where the traffic accident occurred in Ohio, but where the commercial auto policy was formed in Texas, negotiated in Texas, and covered three automobiles "listed as being located and principally garaged in Texas," and where the named insured's address and principal place of business were located in Texas). Therefore, Ohio law governs this case.

{¶26} The Moores cite no case that persuades us otherwise. They rely most heavily on *Am. States Ins. Co. v. Allstate Ins. Co.*, 891 A.2d 75 (Conn.App.2006), in which the Appellate Court of Connecticut held that Florida law, not Connecticut law, applied where the insured's policy was purchased and issued in Florida, the insured was domiciled in Florida but spent three to five months a year in Connecticut with the insured vehicle, the insured vehicle was located primarily in Florida, the accident took place in Connecticut, and a co-insured was domiciled in Connecticut and received the premium statements for the policy there. *Id.* at 89. The court concluded that "Connecticut does not have such a significant relationship to the transaction or the parties so as to trump the application of

Florida's law." *Id.* If anything, based on its facts, the *American States* case favors application of Ohio law here, not Florida law.

{¶27} As we observed above, the Auto Policy's other-owned auto exclusion is enforceable under Ohio law. *Tuohy*, 2007-Ohio-3597, at ¶ 15, citing *Bailey*, 2004-Ohio-4853, at ¶ 17-18. Indeed, the Moores do not contend otherwise. Nor do the parties dispute that, under the Auto Policy's other-owned auto exclusion, the motor scooter that Mr. Moore was operating at the time of the accident was a "motor vehicle" not insured for coverage under the Auto Policy. Therefore, the other-owned auto exclusion bars the Moores' claim.

{¶28} The Moores' first and second assignments of error are, therefore, overruled.

### Assignment of Error No. III

**The trial court erred in holding, as a matter of law, that Allstate could not be estopped from denying coverage under the Auto Policy's "other-owned auto" exclusion by reason of its agent's misrepresentations regarding coverage upon which the Moores relied to reject UM/UIM coverage under their Motorcycle Policy. [Judgment Entry, R.55].**

{¶29} In their third assignment of error, the Moores argue that, at a minimum, a genuine issue of material fact remains as to whether Allstate should be estopped from denying their claim. Specifically, the Moores argue that when they renewed the Motorcycle Policy insuring the motor scooter, a Florida Allstate agent informed Mr. Moore that it was unnecessary to purchase separate UM/UIM

coverage under the Motorcycle Policy because the Moores already had UM/UIM coverage in the Auto Policy. The Moores contend that they reasonably relied on those alleged misrepresentations in declining to purchase UM/UIM coverage for the Motorcycle Policy when they renewed it twelve days before the accident.

{¶30} Even construing the evidence in the Moores' favor, we conclude that, as a matter of law, Allstate was not estopped from denying the Moores' claim. This Court recently explained that, generally, "'[w]aiver and estoppel are not available to bring within the coverage of an insurance policy risks not covered by its terms or expressly excluded therefrom,' because '[a] company should not be obligated to cover a risk for which it did not contract.'" *MacDonald v. Auto-Owners*, 3d Dist. No. 1-12-25, 2012-Ohio-5949, ¶ 46, quoting *Hartory v. State Auto. Mut. Ins. Co.*, 50 Ohio App.3d 1, 3 (11th Dist.1988). *See also Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 668 (1992).

{¶31} In this case, Mr. Moore averred that an employee of a Florida Allstate agent misrepresented to him that while riding his motor scooter, he had UM/UIM coverage through the Auto Policy and, therefore, did not need UM/UIM coverage on the Motorcycle Policy. (B. Moore Aff. at ¶ 11-13, Doc. No. 48, attached). The customer service representative with whom Mr. Moore spoke averred that she made no such misrepresentation to Mr. Moore. (Copper Aff. at ¶ 6-8, Doc. No. 49, attached). The incongruity in Mr. Moore's and Ms. Copper's

stories is of no consequence, however, because the Auto Policy's terms are clear. *Hartory*, 50 Ohio App.3d at 3 ("The two affidavits did not create an issue of material fact since it is not material whether the agent told the Hartorys they were covered.").

**{¶32}** The Auto Policy expressly excluded UM/UIM coverage for "bodily injury" sustained "while * * * on * * * a **motor vehicle** owned by * * * **you** * * * *which is not insured for this coverage under this policy*." (Bold emphasis sic; italics emphasis added.) (Auto Policy at 14-15). Mr. Moore's motor scooter, which Mr. Moore averred "was designed for use on public roadways and was required to be registered and licensed under Florida law," was a "motor vehicle" as defined in the Auto Policy. (B. Moore Aff. at ¶ 6, Doc. No. 48, attached); (Auto Policy at 18). The Auto Policy listed only two "vehicles covered"—the Mustang and the Sierra. (Auto Policy at Declarations). Finally, the Auto Policy required that any changes be made "by endorsement," and no endorsement is present in this case as to UM/UIM coverage. (*Id.* at 4). Therefore, the express terms of the Auto Policy excluded UM/UIM coverage for the motor scooter—a motor vehicle not insured for coverage under the Auto Policy. Ms. Copper's alleged misrepresentations are, therefore, immaterial. (*Id.* at 14-15, 18). *Hartory*, 50 Ohio App.3d at 3.

{¶33} While there are exceptions to the general rule we apply today, none of them apply in this case. *See MacDonald*, 2012-Ohio-5949, at ¶ 46. For example, in *Grimm v. USLife Credit Life Ins. Co.*, 3d Dist. No. 2-98-35 (May 19, 1999), this Court "found equitable estoppel applicable where an insurance company employee represented to the claimant that the insurance policy was in effect at the time of her husband's death; and, where a bank, as an agent for the insurance company, potentially made misleading factual statements which induced the couple to obtain the mortgage insurance in the first place." *MacDonald*, 2012-Ohio-5949, at ¶ 46. However, key in *Grimm* was the existence of two forms, signed by the claimant and her husband, bearing conflicting terms. *Grimm*, 3d Dist. No. 2-98-35, at *3. Those facts are not present here.

{¶34} The Moores cite the exception set forth in *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292 (9th Dist.1994), where the court held that

> an exception to the general rule that waiver and estoppel cannot be used to extend the coverage of an insurance policy exists when the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured, or when the insurer or its agents misrepresent the extent of coverage the insured is purchasing. (*Id.* at 299).

This exception does not apply under the facts alleged by the Moores because Ms. Copper's alleged misrepresentations concerned the extent of coverage under the existing Auto Policy, not the extent of coverage under the separate Motorcycle Policy that the Moores were renewing. (B. Moore Aff. at ¶ 11-12, Doc. No. 48, attached). Moreover, in *Turner*, the insured received a binder explaining the product liability insurance coverage it believed it had purchased after making a written request, and the insurer defended the insured in a product liability action for nearly a year before the insurer informed the insured that it would stop providing a defense based on lack of coverage. 93 Ohio App.3d at 293-294. Once again, those are not the facts here.

{¶35} The Moores cite non-binding cases that they say stand for the proposition that "misrepresentations regarding a policy's coverage for a particular risk made by the insurer or the insurer's agent at the policy's inception or renewal may preclude the insurer from denying coverage after loss where the insured reasonably relies on the misrepresentations to his detriment." (Appellant Brief at 15). The cases cited by the Moores are distinguishable, and they do not alter the general rule, which is applicable in this case. For example, *Gallenstein Bros. Inc. v. Gen. Acc. Ins. Co.*, 178 F.Supp.2d 907 (S.D.Ohio 2001), involved an alleged mistake in the insurance policy. *Id.* at 918. Those facts are not present here.

**{¶36}** Even assuming the rule as stated by the Moores applied in this case, we agree with the trial court that it was not reasonable for the Moores to rely on alleged misrepresentations of a customer service representative of a Florida Allstate agent that contradicted an Ohio insurance policy. *See Pigg v. Commonwealth Life Ins. Co.*, 2d Dist. No. 15256, *7 (Jan. 10, 1996).

**{¶37}** The Moores' third assignment of error is, therefore, overruled.

**{¶38}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**