OPINION
{¶ 1} The plaintiffs-appellants appeal the judgment of the Allen County Common Pleas Court granting summary judgment in favor of the defendant-appellee, Hastings Mutual Insurance Company.
 PARTIES TO THE CASE {¶ 2} Gary Rose ("Gary"), Nancy Rose ("Nancy"), and Auto-Owners Insurance Company ("Auto-Owners") are the plaintiffs-appellants. Gary, Nancy, and Auto-Owners will be collectively referred to herein as the plaintiffs.
 {¶ 3} Jessica Phinney ("Jessica"), Andrew Cross, ("Andrew"), and Hastings Mutual Insurance Company ("Hastings Mutual") are the defendants-appellees.
 STATEMENT OF THE FACTS {¶ 4} In 2002, Andrew was a student at a university located in Lima, Ohio. Andrew's parents, Mark and Leslie Cross, who lived in Indiana, purchased a 1993 *Page 3 
Chevrolet Lumina for Andrew's use while he was in school. The Lumina was titled in one or both parents' names, and they added the vehicle to a pre-existing automobile insurance policy with Hastings Mutual. The policy listed Andrew as a driver of the Lumina.
 {¶ 5} While in school, Andrew became friends with Josh Cobbs and Jessica,[1] and he obtained employment at Arby's. On September 6, 2002, Andrew went to Arby's for his first day of work. To complete his employment forms, Andrew needed copies of his driver's license and social security card. Andrew was not permitted to leave work to make the copies, and Josh and Jessica were also at Arby's. Josh offered to make the copies if Jessica drove them to Meijer's in Andrew's car. The Meijer's store was located approximately two miles west of Arby's. Andrew allowed Jessica, who did not have a driver's license, to drive his car to the store so Josh could get a key cut for himself and make the copies for Andrew.
 {¶ 6} When they returned to Arby's, Josh gave Andrew the paperwork and indicated that Jessica was parking the car in the back of the restaurant. However, Jessica did not park the car and return to the restaurant. Instead, she drove the car to Delphos, Ohio where she picked up two other girls. *Page 4 
 {¶ 7} As Jessica continued driving through Delphos, a local police officer was alerted that a car matching the Lumina's description had been reported for reckless operation. The officer later observed Jessica operating the Lumina in excess of 50 miles per hour. The officer turned on his emergency lights and followed her, attempting to initiate a traffic stop, but Jessica increased her speed, ran a stop sign, and turned left onto South Main Street. The officer observed the high rate of speed and opted to call off the chase. He deactivated his emergency lights, but watched as she approached another intersection with four-way stop signs. The officer observed the Lumina run the stop sign at the intersection and go airborne over two sets of railroad tracks. When the vehicle landed, Jessica lost control and struck the driver's side of Gary's vehicle. The collision caused Gary severe injuries, including broken ribs, a broken pelvis, mild traumatic pancreatitis, an anterior column fracture, and a hematuria. Both vehicles were total losses.
 STATEMENT OF THE CASE {¶ 8} On June 7, 2004, Gary, Nancy, and Auto-Owners filed a complaint against Jessica and Andrew. Gary asserted one claim of negligence and one claim of negligence per se against Jessica and one claim of negligent entrustment against Andrew. Nancy asserted a claim against Jessica and Andrew for loss of consortium, and Auto-Owners, as Gary and Nancy's insurer, asserted one claim *Page 5 
seeking reimbursement from Jessica and Andrew for the policy benefits it had paid to or on behalf of its insureds.
 {¶ 9} On July 16, 2004, Andrew filed his answer to the complaint, asserting that Jessica had not been authorized to drive his vehicle. On April 18, 2005, Andrew filed a motion for summary judgment, arguing that he was entitled to judgment on plaintiffs' negligent entrustment claim because Jessica had exceeded the scope of his permission when she drove his car to Delphos. The plaintiffs filed a memorandum in opposition, but on July 14, 2005, the trial court granted summary judgment to Andrew, dismissed the case against him, and certified the judgment entry as final pursuant to Civ.R. 54(B).
 {¶ 10} On September 13, 2005, the plaintiffs filed a motion for default judgment against Jessica, who had failed to file an answer, admitted liability during her deposition, and pled guilty to several felony offenses resulting from the collision. The trial court conducted a hearing on the motion for default judgment against Jessica, and on October 13, 2005, it filed a judgment entry granting Plaintiffs' said motion. The court awarded compensatory damages of $125,000 and punitive damages of $1,000. None of these judgment entries were appealed.
 {¶ 11} On December 27, 2005, Plaintiffs filed a "Supplemental Petition and Complaint for Entry of Judgment," naming Hastings Mutual as the defendant. Plaintiffs sought a declaration that Jessica was an "insured" under the terms of *Page 6 
Hastings Mutual's policy with Mark and Leslie. The plaintiffs also sought judgment against Hastings Mutual for the amount of the October 2005 judgment entered against Jessica. Plaintiffs alleged that under the terms of the insurance policy, Jessica was an "insured," and they were entitled to collect judgment through the policy under R.C. 3939.06.
 {¶ 12} Hastings Mutual filed an answer on January 13, 2006, stating that although Jessica satisfied the definition of an "insured," she was excluded from coverage because she did not have a reasonable belief she was entitled to use the car, and she had intentionally caused bodily harm and/or property damage. Hastings Mutual filed a certified copy of its policy and a motion for summary judgment on October 30, 2006. In its motion for summary judgment, Hastings Mutual expounded on the arguments raised in its answer, arguing that Jessica was not entitled to coverage because she had used the vehicle without a reasonable belief that she was entitled to do so since she did not have a driver's license; because she had failed to notify the insurer that the collision had occurred; and because the policy excluded from coverage bodily injury and property damage caused by the tortfeasor's intentional or criminal acts. Hastings Mutual also argued that Indiana law should govern the policy because Andrew's parents live in Indiana, which is where the policy was entered into. *Page 7 
 {¶ 13} Plaintiffs filed a memorandum in opposition to Hasting Mutual's motion, arguing that Ohio law applies. Under Ohio law, Plaintiffs argue there were genuine issues of material fact as to whether Jessica reasonably believed she was entitled to use the vehicle. Plaintiffs argued that Jessica's failure to notify Hastings Mutual of the collision was not at issue because the insurer knew about the collision within one month of the occurrence. They also argued that the exclusion based on the tortfeasor's intentional or criminal acts requires the injury to be expected, and Jessica did not intend the injuries suffered by Plaintiffs.
 {¶ 14} On December 5, 2006, the trial court granted summary judgment in favor of Hasting Mutual. Plaintiffs appeal the judgment of the trial court, setting forth one assignment of error for our review.
 Assignment of Error The trial court erred in granting summary judgment to Hastings Mutual Insurance Co. * * * because genuine issues of material fact remain for trial. The specific issues are whether Jessica Phinney had a reasonable belief that she was entitled to drive the subject vehicle and whether her actions trigger application of the intentional/criminal acts exclusion contained in the Hastings [Mutual] policy.
 STANDARD OF REVIEW {¶ 15} An appellate court reviews a grant of summary judgment de novo, independently and without deference to the trial court's decision.Adkins v. Chief Supermarket, 3d Dist. No. 11-06-07, 2007-Ohio-772, at ¶ 7, citing Conley- *Page 8 Slowinski v. Superior Spinning and Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991; Hasenfratz v. Warnement, 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing Lorain Nat'l. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. "A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met." Adkins, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ.R. 56(C); Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679,1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *." Adkins, at ¶ 8, citingJacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. Jacobs, at 7.
 {¶ 16} The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St .3d 112, 116,526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's *Page 9 
claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ.R. 56(C).Mitseff, at 115, citing Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46, citing Hamlin v. McAlpin Co. (1964),175 Ohio St. 517, 519-520, 196 N.E.2d 781; Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *."Dresher, at 294.
 ANALYSIS {¶ 17} In its motion for summary judgment, Hastings Mutual raised several arguments. First, Hastings Mutual agreed that Jessica was an "insured" as defined by the policy. However, the policy excludes liability coverage "for any `insured' * * * Using a vehicle without a reasonable belief that that `insured' is entitled to do so." For this reason, Hastings Mutual argued that the court should apply Indiana law because under Indiana law, a person who does not have a valid driver's license cannot reasonably believe they are entitled to drive. However, in Ohio, the courts have not drawn the same bright-line rule and instead consider the tortfeasor's physical abilities or capabilities to drive. Second, Hastings Mutual argued that Jessica failed to provide notice of the collision pursuant to the terms in *Page 10 
the policy, thereby relieving its duty to pay damages. Finally, Hastings Mutual argued they were not obligated to pay because the policy excludes coverage to people who cause damages that were reasonably expected to result from that person's intentional or criminal acts.
 {¶ 18} In response, Plaintiffs argued that Ohio's substantive law applies under the most significant relationship test, and using Ohio law, Plaintiffs contend there is a genuine issue of material fact as to whether Jessica reasonably believed she was entitled to use the Lumina. Plaintiffs contend that Hastings Mutual was aware of the collision since September 2002, and therefore, Jessica's failure to give notice pursuant to the terms of the policy is inconsequential. Finally, Plaintiffs argued that there are genuine issues of material fact as to whether the intentional or criminal acts exclusion applies. Plaintiffs assert that Jessica's convictions stemming from the collision are insufficient evidence to prove that she intended to cause injury.
 {¶ 19} The first issue we address is whether Ohio law or Indiana law governs the insurance policy. In the absence of a choice-of-law provision between the parties, the laws of the forum state must be applied to determine two issues: first, whether the cause of action is a tort or arises as a contract claim; and second, whether the issue to be resolved is substantive or procedural. 16 Ohio Jur. 3d *Page 11 
Conflicts of Law § 2, citing Lawson v. Valve-Trol Co. (1991),81 Ohio App.3d 1, 610 N.E.2d 425; 16 Am.Jur.2d Conflicts of Law § 3, 4.
 {¶ 20} Although the underlying dispute was a tort action for personal injuries, the issue before us is whether Hastings Mutual must provide liability coverage for the tortfeasor, Jessica. Despite the underlying personal injury claims, the issue of insurance coverage is a contract action. See generally Gomolka v. State Auto Mut. Ins. Co. (1982),70 Ohio St.2d 166, 436 N.E.2d 1347.
 {¶ 21} Generally, "substantive law is that which creates duties, rights, and obligations, while procedural law prescribes the methods of the enforcement of those rights." State ex rel. Columbus v. Boyland
(1979), 58 Ohio St.2d 490, 492, 391 N.E.2d 324, citing State ex rel.Holdridge v. Indus. Comm. (1967), 11 Ohio St.2d 175, 178,228 N.E.2d 621; Kilbreath v. Rudy (1968), 16 Ohio St.2d 70, 72, 242 N.E.2d 658;Denicola v. Providence Hosp. (1979), 57 Ohio St.2d 115, 117, at fn. 2,387 N.E.2d 231. In this case, the plaintiffs filed a supplemental complaint against Hastings Mutual pursuant to R.C. 3929.06(A)(1), which states:
 If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's *Page 12 policy of liability insurance applied to the satisfaction of the final judgment.
R.C. 3929.06(A)(1) is clearly a substantive law, creating rights for judgment creditors against a tortfeasor's insurer. Subsequent subsections of the statute provide the appropriate procedure for enforcing the rights created in subsection (A)(1). However, this appeal calls upon us to determine whether Ohio's substantive law (R.C.3929.06(A)(1)) applies, or whether Indiana's substantive law applies.
 {¶ 22} To determine choice-of-law issues in a contract case, we are guided by the Ohio Supreme Court's opinion in Ohayon v. Safeco Ins. Co.of Illinois, 91 Ohio St.3d 474, 2001-Ohio-100, 747 N.E.2d 206.Foster v. Motorists Ins. Co., 3d Dist. No. 10-03-07, 2004-Ohio-1049, at ¶ 12. In Ohayon, the Supreme Court held that conflicts of law questions in contract cases are resolved under Sections 187 and 188 of the Restatement of the Law 2d, Conflicts of Law. Id., citingOhayan, at paragraph two of the syllabus.
 {¶ 23} Under Section 187 of the Restatement, if the parties choose the law of a state to apply to the contract, that law will generally be applied. Id. at ¶ 13, citing Ohayon, at 477. However, if the contract contains no choice-of-law provision, Section 188 of the Restatement, or the most significant relationship test, applies. Id., citingOhayon, at 477. Hastings Mutual's policy did not provide a *Page 13 
choice-of-law provision, therefore we must apply Section 188 of the Second Restatement.
 {¶ 24} In determining which state's laws apply, we must consider:
 (1) the place of contracting;
 (2) the place of negotiation;
 (3) the place of performance;
 (4) the location of the subject matter, and;
 (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.
Id, at ¶ 13, citing Ohayon. Additionally, we must view these factors under the presumption that "`the rights created by an insurance contract should be determined "by the law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless * * * some other state has a more significant relationship to the transaction and the parties."`" Id., at ¶ 13, quoting Ohayon, at 479, quoting Restatement 188. Ordinarily, we would partake in the above analysis; however, based on our discussion of the merits below, we need not resolve the conflict of law issue.
 {¶ 25} Turning to the merits of the appeal, Hastings Mutual contends that Jessica is excluded from coverage because she did not have a reasonable belief that she was entitled to operate the car. The policy provided liability coverage for "`bodily injury' or `property damage' for which any `insured' becomes legally *Page 14 
responsible because of an auto accident." (Def.'s Not. of Filing a Certified Copy of its Policy, Oct. 30, 2006, at 2). However, the policy excludes coverage if the "insured" is "[u] sing a vehicle without a reasonable belief that that `insured' is entitled to do so." (Id., at 3). Hastings Mutual has relied on Indiana law to argue that Jessica could not have a reasonable belief she was entitled to operate the Lumina because she did not have a driver's license. Were we to apply Indiana law, clearly, Hastings Mutual would be correct. See Smith v.Cincinnati Ins. Co. (Ind. 2003), 790 N.E.2d 460. However, even under Ohio law, Jessica could not have had a reasonable belief that she was entitled to operate Andrew's vehicle when she drove it from Arby's to Delphos.
 {¶ 26} In reviewing the same exclusionary language, the Twelfth District Court of Appeals has stated, " `the "test" herein is not whether [Jessica] believed [she] was licensed to drive * * * but whether [she] reasonably believed that [she] was authorized to drive the car, notwithstanding the means of obtaining the authorization.'" (Emphasis sic.) Blount v. Kennard (1992), 82 Ohio App.3d 613, 617,612 N.E.2d 1268, quoting Cincinnati Cas. Co. v. Rickard (Oct. 25, 1990), 5th No. CA-726, unreported, at 5-6.
 {¶ 27} The Ohio Supreme Court agreed with the analysis used inBlount, and stressed the proper test, which is based on authorized use.Broz v. Winland, 68 Ohio St.3d 521, 526, 1994-Ohio-529, 629 N.E.2d 395. In Broz, the court *Page 15 
indicated that "permission from an authorized user creates a question of fact as to whether the driver had a reasonable belief that she was entitled to use the car." Id., citing Collins v. Fessler (Dec. 5, 1983), 2nd Dist. No. 83-CA-20; State Farm Mut. Auto. Ins. v.Progressive Cas. Ins. Co. (July 26, 1988), 2nd Dist. No. CA 10748. In this case, Andrew was an authorized user of the Lumina since the car was titled in one or both of his parents' names. Therefore, we must examine more closely the authority granted to Jessica by Andrew.
 {¶ 28} We have reviewed the record and have determined that there are no genuine issues of material fact, and Hastings Mutual is entitled to judgment as a matter of law. In Andrew's deposition, he testified that he gave Josh authority to make copies of his driver's license and social security card. (Dep., Cross, Andrew, Apr. 18, 2005, at 30-31). He stated that Jessica had "snatched" his keys off the table and offered to drive Josh to Meijer's. (Id. at 31). Andrew testified that he asked to see Jessica's driver's license, and she showed him an Ohio identification card, which he believed to be a driver's license. (Id. at 31). Andrew testified that he did not specifically limit where Jessica could go, but he did tell her to go only to Meijer's and then back to Arby's. (Id. at 32-33; 50-51). Andrew stated that when Josh and Jessica returned from Meijer's, Josh told him Jessica was parking the car and would bring the keys back when she was done. (Id. at 31). *Page 16 
 {¶ 29} In her deposition, Jessica indicated that Josh wanted her to drive him to Meijer's so he could make a copy of a key. (Dep., Phinney, Jessica, June 22, 2005, at 43). Jessica told Josh she did not have a license, and he told her not to tell Andrew. (Id. at 46). Jessica overheard Josh tell Andrew that Jessica would be driving them to the store, but he did not state which store. (Id. at 46-47). Jessica indicated that Andrew handed her the car keys, never inquired about a driver's license, and never placed a limit on time or whereabouts. (Id. at 46; 48; 49; 51). Jessica testified that when she and Josh returned to the Arby's parking lot, Josh instructed her to drive to Delphos to pick up two of his friends and to bring them to Lima. (Id. at 64-65). Jessica testified that prior to the accident, she had driven a vehicle either six or seven times and that she had never had a driver's license. (Id. at 19-20; 88; 113). Jessica stated she believed she was capable of driving and that she had learned to drive by watching other people. (Id. at 113).
 {¶ 30} Jessica's ability to drive is not at question in this case. The only fact at issue is whether she was authorized to drive the car when the collision occurred. Although Jessica's and Andrew's testimony were directly opposed, one fact remains constant; Andrew did not authorize Jessica to go to Delphos, and even if Josh told her to go to Delphos, Josh had no authority to instruct her as such. Andrew was working inside Arby's when Josh and Jessica returned from Meijer's. Andrew did not overhear Josh's instructions and simply remain silent; he had no *Page 17 
idea Jessica had taken his car for any other purpose or to go to any other location. Andrew testified that he did not give Jessica a specific restriction; however, he did tell her to drive only to Meijer's and back to Arby's. This was a limitation on where she was authorized to take the car, even if the time it took for her to do so was not limited. Furthermore, Jessica overheard the conversation between Josh and Andrew before she left Arby's to go to Meijer's, and she was aware of Andrew's instructions. At that time, there was no conversation about her going anywhere else. Also at that time, Andrew knew only that Jessica was going to drive Josh to a store to get a key made. When Josh returned to Arby's (because Jessica drove him there), Jessica's authority to drive the Lumina ended.
 {¶ 31} We note that even a slight change in the facts could affect the outcome of this case; however, on these particular facts, construing all of the evidence in favor of the non-movant, the plaintiffs, there is no genuine issue of material fact, and Hastings Mutual is entitled to judgment as a matter of law. On these facts, despite the differences in the testimony, Jessica could not have a reasonable belief that she was entitled to operate the Lumina after she returned to Arby's.
 {¶ 32} Having held that Jessica is not entitled to coverage under the insurance policy, the remaining arguments raised by Hastings Mutual are moot. *Page 18 
The sole assignment of error is overruled, and the judgment of the Allen County Common Pleas Court is affirmed.
Judgment affirmed.
ROGERS, P.J., and PRESTON, J., concur. r
[1] The record is disputed as to whether Andrew and Jessica were only friends or if they were dating. *Page 1