[Cite as *Copeland Corp., L.L.C. v. Travelers Cas. & Sur. Co.*, 2026-Ohio-525.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SHELBY COUNTY

COPELAND CORPORATION LLC
f/k/a COPELAND CORPORATION,

    PLAINTIFF-APPELLEE,

  v.

TRAVELERS CASUALTY AND
SURETY COMPANY,

    DEFENDANT-APPELLANT,

  -And-

CENTURY INDEMNITY COMPANY
AS SUCCESSOR TO INSURANCE
COMPANY OF NORTH AMERICA, ET
AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 17-25-11

OPINION AND
JUDGMENT ENTRY

Appeal from Shelby County Common Pleas Court
Civil Division
Trial Court No. 21CV000160

Judgment Affirmed

Date of Decision: February 17, 2026

Case No. 17-25-11

---

APPEARANCES:

**Charles W. Browning for Appellant**
**Stacy R.C. Berliner for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Travelers Casualty and Surety Company ("Travelers"), appeals the July 9, 2025 judgment of the Shelby County Court of Common Pleas, in which the trial court granted, pursuant to a motion for partial summary judgment, declaratory judgment in favor of plaintiff-appellee, Copeland Corporation LLC ("Copeland"). The trial court held that Ohio law, not Pennsylvania law, governs the interpretation of three insurance policies issued by Travelers under which Copeland is an insured and, further, that asbestos-related claims brought against Copeland should be treated as multiple occurrences, not a single occurrence, for purposes of determining the applicable coverage limits of those policies. For the reasons set forth below, we affirm.

*Factual Background and Procedural History*

{¶2} This appeal involves an insurance coverage dispute relating to the amount of coverage available to Copeland, an insured under three insurance policies issued by Travelers. Copeland is a company based in Sidney, Ohio. For many decades, Copeland manufactured and distributed, nationwide, various types of

compressors for cooling and refrigeration products. The compressors built and sold by Copeland incorporated gaskets, supplied to Copeland by multiple manufacturers. Beginning in the early 2000s, Copeland began being named as a defendant in a number of lawsuits alleging that the various plaintiffs in those cases had suffered bodily harm as a result of exposure to asbestos in the gaskets contained in the compressors manufactured by Copeland.

{¶3} On August 24, 2021, Copeland filed the instant action in the trial court, naming as defendants Travelers (as successor-in-interest to Aetna Casualty & Surety Company) and multiple other insurance companies. On April 11, 2022, with leave granted by the trial court, Copeland filed an amended complaint.

{¶4} The amended complaint asserted that the action arose from a dispute between Copeland and its insurers over the insurers' obligations to defend and indemnify Copeland against liability for asbestos-related bodily-injury claims covered under liability policies purchased by Copeland. The amended complaint asserted that, in 1981, Copeland was purchased by the Hillman Company and, as a subsidiary of the Hillman Company, Copeland was often added as an insured to insurance policies issued to the Hillman Company from 1981 to 1985, the approximate period that Copeland was owned by Hillman. Specific to Travelers and the issues in this appeal, the amended complaint alleged that Travelers had

issued three such primary liability insurance policies ("the Hillman policies" or "the policies") under which Copeland was an insured.

{¶5} The amended complaint asserted that Copeland had been named a defendant in multiple underlying actions alleging that Copeland was subject to tort liability for bodily injury sustained by the plaintiffs in those actions ("the underlying asbestos claims"), as a result of the plaintiffs' exposure to asbestos-containing products manufactured by Copeland. The amended complaint asserted that, in 2005, Copeland filed a prior action in the Shelby County Court of Common Pleas in which Copeland sought insurance coverage from Travelers, and other insurers, for the underlying asbestos claims and that Copeland and Travelers settled that prior case by reaching a confidential agreement as to the parties' rights and responsibilities under certain insurance policies, with regard to the underlying asbestos claims.

{¶6} The amended complaint asserted that Copeland had then been named as a defendant in another underlying asbestos claim, "*Phipps v. Copeland*", filed in 2018 in the Superior Court of California for Los Angeles County ("the *Phipps* lawsuit"), and that a subsequent jury trial in the *Phipps* lawsuit had resulted in a judgment against Copeland, which Copeland unsuccessfully appealed. As a result, Copeland asserted in the amended complaint that it was entitled to coverage under

insurance policies issued by the defendants in this case, including the three Hillman policies issued by Travelers.

{¶7} Specific to the policies at issue in this appeal, the amended complaint asserted that each of the three policies has a $1,000,000.00 per occurrence limit and a $3,000,000.00 aggregate limit, resulting in $9,000,000.00 of total coverage under the three policies. The amended complaint alleged that Copeland had been informed by Travelers that it would only pay a portion of the policy limits and that such payment would, in Travelers' view, exhaust the coverage available under the Hillman policies for all underlying asbestos claims, as Travelers was contending that all underlying asbestos claims against Copeland constituted a single occurrence, which Copeland disputed. Specifically, Copeland asserted that it was entitled to coverage of up to the $3,000,000.00 per occurrence limit for each occurrence, up to the full $9,000,000.00 aggregate limits. As a result, Copeland sought, among other things, declaratory judgment pursuant to R.C. 2721.02(A) with respect to the rights and duties of Copeland and Travelers relating to the coverage at issue in the Hillman policies.

{¶8} On June 7, 2024, Travelers filed a motion for summary judgment and brief in support thereof. In support of its motion for summary judgment, Travelers argued that (1) Pennsylvania law is applicable to the Hillman policies because the policies were negotiated and issued in Pennsylvania to the Hillman Company, which

was located there, and that the applicable factors under Section 188 of the Restatement (Second) of Conflict of Laws compel application of Pennsylvania law; and (2) Pennsylvania law uniformly applies a single occurrence approach to product-based asbestos bodily-injury claims and, therefore, the underlying asbestos claims arose from a single occurrence. Based on those arguments, Travelers asserted that the three Hillman policies are exhausted because those policies each contain a limit of $1,000,000.00 per occurrence and Travelers had already made a total of $3,000,000.00 in indemnity payments on Copeland's behalf for underlying asbestos claims.

{¶9} On June 24, 2024, Copeland filed a motion for partial summary judgment. In that motion, Copeland sought a determination by the trial court that (1) Ohio law, not Pennsylvania law, is applicable to the Hillman policies; and (2) the underlying asbestos claims constitute multiple occurrences under Ohio law. Based on those legal positions, Copeland asserted that the Hillman policies are not exhausted and that Travelers owes to Copeland an additional $6,000,000.00 pursuant to the total aggregate policy limits.

{¶10} On July 5, 2024, Copeland filed a response to Travelers' motion for summary judgment. In that response, Copeland asserted the same positions put forth in its own motion for partial summary judgment.

{¶11} On July 12, 2024, Travelers filed a reply in support of its motion for summary judgment and, on July 22, 2024, Travelers filed a response to Copeland's motion for partial summary judgment. Travelers asserted that Copeland's position was erroneous in that it focused on Copeland's operations and ignored that the three policies at issue were issued to Hillman, not Copeland.

{¶12} On August 9, 2024, Copeland filed a reply in support of its motion for partial summary judgment.

{¶13} On June 4, 2025, the trial court held a hearing at which counsel for Copeland and Travelers presented argument in support of the competing motions for summary judgment.

{¶14} On July 9, 2025, the trial court filed a decision in the case. In that judgment, the trial court found as an initial matter that the three insurance policies at issue do not contain a choice-of-law clause and, in the absence of such a clause in those contracts, the court was required to look to the factors set forth in the Restatement (Second) Conflict of Laws with regard to the choice of law to be applied. Upon doing so, the trial court ruled in favor of Copeland, as the court found that Ohio has a more significant relationship to the issues in dispute and the trial court held that, therefore, Ohio law is applicable. The trial court further held, also in favor of Copeland, that upon applying Ohio law to the "occurrences issue", the underlying asbestos claims constituted multiple occurrences.

{¶15} On August 18, 2025, the trial court filed a nunc pro tunc judgment entry relating to its judgment of July 9, 2025, adding "no just reason for delay" language pursuant to Civ.R. 54(B) and language finding that the July 9, 2025 judgment constituted a final appealable order.

{¶16} On August 8, 2025, Travelers filed the instant appeal of the July 9, 2025 judgment entered in the trial court.

*Assignments of Error*

{¶17} On appeal, Travelers raises two assignments of error for review by this Court.

**First Assignment of Error**

**The trial court reversibly erred in holding Ohio law applies to the Hillman Policies where those policies were issued to Hillman – a Pennsylvania company – and not to Copeland, and thus are governed by Pennsylvania law.**

**Second Assignment of Error**

**The trial court reversibly erred in holding the underlying asbestos claims, which all arise from a common source, constitute multiple occurrences.**

*Standard of Review*

{¶18} "'A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations.'" *Mid-Am. Fire and Cas. Co. v. Heasley*, 2007-Ohio-1248, ¶ 8, quoting *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 312 (1951). *See also* R.C. 2721.02 et seq.

**{¶19}** "[A]n appellate court reviewing a declaratory-judgment matter should apply an abuse-of-discretion standard in regard to the trial court's holding concerning the appropriateness of the case for declaratory judgment, i.e., the matter's justiciability, and should apply a de novo standard of review in regard to the trial court's determination of legal issues in the case." *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1.

Civ.R. 56(C) provides, in relevant part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

**{¶20}** "Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Tharp v. Whirlpool Corp.*, 2018-Ohio-1344, ¶ 24 (3d Dist.), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

**{¶21}** Appellate courts also conduct a de novo review of trial court decisions granting a motion for summary judgment. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this Court must conduct an independent review of the

evidence and arguments that were before the trial court without deference to the trial court's decision. *Tharp v. Whirlpool Corp.*, *supra*, at ¶ 23.

*Analysis of Assignments of Error*

*First Assignment of Error*

{¶22} In the first assignment of error, Travelers asserts that the trial court erred in finding that Ohio law governs the construction and application of the three insurance policies at issue. As noted above, Travelers contends that Pennsylvania law is applicable to the policies in question, while Copeland maintains that Ohio law applies to those policies.

{¶23} To determine choice-of-law issues in a contract case, we are guided by the decision of the Supreme Court of Ohio in *Ohayon v. Safeco Ins. Co. of Illinois,* 91 Ohio St.3d 474 (2001). *Rose v. Phinney*, 2007-Ohio-5494, ¶ 22 (3d Dist.). In *Ohayon,* the Ohio Supreme Court held that choice of law questions in contract cases are to be resolved under Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws. *Id.*, citing *Foster v. Motorists Ins. Co.*, 2004-Ohio-1049, ¶ 12 (3d Dist.), citing *Ohayon,* at paragraph two of the syllabus.

{¶24} Pursuant to Section 187 of the Restatement, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties. *Ohayon*, at 477. However, if the contract at issue contains no choice-of-law provision, Section 188 of the Restatement provides that

the rights and duties under the contract "are determined by the law of the state that, with respect to that issue, has 'the most significant relationship to the transaction and the parties.'" *Id.*, quoting Restatement at 575, Section 188(1).

{¶25} In determining what state has the most significant relationship, the Supreme Court of Ohio found that Sections 188(2)(a) through (d) of the Restatement specifically provide that courts should consider the following: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.*

{¶26} In *Ohayon*, the Supreme Court of Ohio further held that, "[i]n insurance cases, this focus will often correspond with the Restatement's view that the rights created by an insurance contract should be determined 'by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.'" (Emphasis *sic*.) *Id.* at 479, quoting Restatement at 610, Section 193.

{¶27} In the instant case, upon applying the foregoing principles to the undisputed facts in evidence at the summary judgment stage, the trial court determined as follows:

> The Court finds Pennsylvania's relationship to the issue in dispute is relatively limited; to wit: Travelers' policies provide nationwide

coverage and would necessarily involve litigation in multiple jurisdictions; while the Hillman Company was located in Pennsylvania, the contract itself was negotiated, signed, and finalized in multiple states (Ohio, Pennsylvania, Connecticut); the Hillman Company played no role in Copeland's manufacturing processes and policies; and, the majority owner of the Hillman Company has expressed no real interest in the instant litigation. In contrast, Ohio has a more significant relationship to the issues in dispute; to wit: Copeland's base of operations is in Ohio; Copeland ultimately paid the premiums on the subject policies from Ohio; Copeland was involved in the manufacture and design of the products in Ohio which give rise to the claims on the Travelers' Policies; and Copeland was involved in the negotiations related to the policies in Ohio.

The Court specifically finds that the principal risk at issue is related to liability arising from Copeland's compressor business. The Court further finds that Ohio has the most significant relationship to the transaction and the parties as it relates to the risk issue in dispute. Accordingly, the Court finds that Ohio law should apply to this dispute.

(7/9/25 Decision/Judgment on Choice of Law and Coverage Issues Raised in the Parties' Competing Motions for Partial Summary Judgment, Docket No. 498).

{¶28} Following our de novo review of the record and the relevant law, we conclude that the trial court did not err in making that determination.

{¶29} Preliminarily, we note that, as the trial court accurately found, the three insurance policies at issue here, which are essentially identical, do not contain a choice-of-law provision. Therefore, as dictated by the Supreme Court of Ohio in *Ohayon*, *supra*, we must apply the test set forth in Section 188 of the Restatement to the facts presented by this case.

{¶30} On appeal, as in the trial court, Travelers points to several uncontested facts in support of its position that Pennsylvania law should be applied to the coverage dispute over the three policies. The three insurance policies were issued to the Hillman Company, which is incorporated in Pennsylvania and has been headquartered there for all times relevant to this case. At the time the policies were issued, Hillman – whose roots are in the steel, coal, and coke industries in Pennsylvania – was also in the business of purchasing companies, owning such companies for a few years, and then selling them. During the timeframe in which the three policies were issued, Hillman invested in hundreds of companies, including Copeland, pursuant to that business strategy. Insurance policies procured by Hillman were obtained through an insurance broker located in Pittsburgh, and Hillman's employees who worked on risk management and insurance claim management for Hillman were also all based in Pittsburgh, although the underwriting and pricing decisions for the policies, and the drafting of the policies themselves, all occurred at Travelers' home office in Hartford, Connecticut.

{¶31} On the other hand, notwithstanding those facts, Copeland argues that Travelers' position overlooks a number of other undisputed facts that are outcome-determinative as to the choice-of-law issue, and which support the trial court's holding that Ohio law is applicable here. We agree.

**{¶32}** One of the key facts supporting Copeland's position is that Copeland, in addition to Hillman, is a named insured under the three policies. The Supreme Court of Ohio has "'long held that an insurance policy is a contract between the insurer and the insured." (Emphasis omitted.) *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 2006-Ohio-6551, ¶ 23, quoting *Ohayon*, *supra*, at 478. For that reason, we agree with Copeland that it stands on the same basis as Hillman as a contracting party for purposes of the analysis here, and it is undisputed that Copeland's principal place of business has been in Ohio for decades, including the time period during which the three disputed policies were issued. In particular, Copeland's compressor-manufacturing business, from which Copeland's potential liability stems in any underlying asbestos claims, was located solely in Ohio during that time period.

**{¶33}** Additionally, we note that the companies, including Copeland, owned by Hillman in its capacity as a conglomerate that purchased and temporarily held as assets other businesses, were located and operated in states throughout the country. In other words, while the Hillman Company may be headquartered in Pennsylvania, its business interests were located in many additional states, including Ohio as relevant to the instant case.

**{¶34}** Also, evidence in the record reflects that at least one representative of Travelers, John Glancy, was located in Ohio and, from that location, Glancy was

-14-

involved in the underwriting of the Hillman policies. Further, facts in the record indicate that, in arriving at the premiums to be charged for each insured under the policies, Travelers assessed each insured's risk separately, and then charged additional premiums per insured based on that individual risk assessment. In Copeland's case, Travelers' risk assessment would have focused on Copeland's Ohio-based operations in determining the additional premium to be charged to insure Copeland under the policies, an expense that was then passed on to Copeland.

{¶35} It is also undisputed that the Hillman Company has no exposure in the underlying asbestos claims that have been pursued against Copeland, and that the Hillman Company has demonstrated no interest in the instant litigation.

{¶36} Finally, as this Court stated in *Allstate Fire & Cas. Ins. v. Moore*, 2013-Ohio-2262 (3d Dist.), "the place of performance of an insurance policy is the place of 'the payment of insurance benefits.'" *Id*., at ¶ 22, quoting *Garcia v. Green*, 2003-Ohio-3841, ¶ 23 (6th Dist.). In this case, Copeland has or would receive the benefits from the policies in Ohio. Thus, that particular factor set forth in the Restatement also supports the conclusion that Ohio law applies to the policy dispute here.

{¶37} In sum, upon applying the test set forth in Section 188 of the Restatement, as adopted by the Supreme Court of Ohio in *Ohayon*, we conclude that

Ohio bears the most significant relationship to the insurance contracts at issue with regard to Copeland as the insured: the place of contracting was, in part, in Ohio; the policies were delivered to Copeland in Ohio; the place of performance is in Ohio; the location of the subject matter of the contracts was Ohio; and the place of business of Copeland – as an insured party to the contract – was and is Ohio. Ohio is also the principal location of the insured risk at issue here under those policies, which the Supreme Court of Ohio in *Ohayon* expressly deemed to be a key factor in a choice-of-law analysis under the Restatement.

{¶38} Based on a consideration of all of those factors, we find that the trial court did not err in its choice-of-law determination.

{¶39} The first assignment of error is overruled.

*Second Assignment of Error*

{¶40} In the second assignment of error, Travelers asserts that the trial court committed reversible error in holding that the underlying asbestos claims constitute multiple occurrences for purposes of determining the coverage available to Copeland under the three insurance policies. As previously noted, this issue is significant because each of the three policies at issue has a $1,000,000.00 per occurrence limit but a $3,000,000.00 aggregate limit. Travelers' position is that all underlying asbestos claims against Copeland constitute a single occurrence and, therefore, the three policies provide a total of $3,000,000.00 of coverage to

Copeland ($1,000,000.00 per policy), which has been exhausted. On the other hand, Copeland argues that the underlying asbestos claims should be deemed multiple occurrences, in which case the three policies would provide a total of $9,000,000.00 of potential coverage to Copeland for such claims.

{¶41} According to Travelers, pursuant to the policy language and upon applying a legal analysis known as the "cause test", Copeland's manufacture and distribution of the compressors allegedly containing asbestos constituted a single accident or occurrence giving rise to all of the underlying asbestos claims, and therefore the coverage has been exhausted under the single-accident/occurrence terms of the three policies. Conversely, Copeland argues that the underlying asbestos claims resulted from multiple occurrences. The trial court agreed with Copeland's position in holding that the underlying asbestos claims constituted multiple occurrences under the policies.

{¶42} Having found that the connections to Ohio in this case represent the most significant relationship to the insurance transaction and the parties, we will therefore, pursuant to *Ohayon*, *supra*, utilize Ohio law to interpret the extent of the coverage provided by the three insurance policies.

{¶43} "It is well settled that 'insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by

implication so as to embrace an object distinct from that originally contemplated by the parties.'" *Tuthill Energy Systems v. Employers Ins. of Wausau*, 2004-Ohio-1394, ¶ 7 (3d Dist.), quoting *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 2002-Ohio-2842, ¶ 8. "Common words in a contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement." *Cincinnati Ins. Co. v. Anders*, 2003-Ohio-3048, ¶ 34.

**{¶44}** "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Tuthill Energy Systems*, *supra*, at ¶ 7, citing *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "However, it is well-settled that, where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide*, 35 Ohio St.3d 208 (1988).

**{¶45}** As noted, the policy provisions under dispute in this appeal relate to the issue of whether all of the underlying asbestos claims constitute a single "occurrence" under the policies, or whether those claims constitute multiple occurrences.

In the three policies at issue, "occurrence" is defined as follows:

"[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property

damage neither expected nor intended from the stand-point of the insured[.]

**{¶46}** Pursuant to the policies, "bodily injury" means "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom[.]"

**{¶47}** Regarding the limits of liability coverage in the policies, the contracts provide "[a]ll bodily injury, personal injury, property damage and advertising offense arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."

**{¶48}** As noted in *William Powell Co. v. OneBeacon Ins. Co.*, 2016-Ohio-8124 (1st Dist.), "[o]ver the past 30 years, as asbestos liabilities have reached magnitudes never imagined by insurers or insureds, courts have struggled with how to count occurrences." *Id.*, at ¶ 19, citing Stempel, *Assessing the Coverage Carnage: Asbestos Liability and Insurance After Three Decades of Dispute*, 12 Conn.Ins.L.J. 349 (2005/2006). "Courts generally have applied one of three theories to identify an occurrence: a theory that looks to the underlying "cause" of the accident, a theory that focuses on the "effect" of the accident, or a theory that looks to the "triggering event" that caused liability. *Id.*, citing *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 255 Conn. 295, 313, 765 A.2d 891 (2001).

**{¶49}** In Ohio, there is a lack of authority from the Supreme Court of Ohio on the interpretation and application of the insurance policy term "occurrence" with

regard to claims arising from alleged asbestos exposure. Additionally, while Ohio's courts of appeals have decided cases where the courts applied the "causation theory" when called upon to determine whether the claims at issue constituted a single occurrence or multiple occurrences, most of those decisions are distinguishable from the matter before us, as those cases generally involve an analysis of coverage for claims of property damage and/or bodily injury following car accidents, not an analysis of liability coverage for claims stemming from alleged asbestos exposure made by multiple potential plaintiffs.

{¶50} However, in *Cincinnati Ins. Co. v. ACE INA Holdings, Inc.*, 2007-Ohio-5576 (1st Dist.), our judicial colleagues on the First District Court of Appeals addressed a coverage dispute involving underlying asbestos claims, and ultimately applied the triggering-event theory in holding that multiple underlying asbestos claims constituted multiple occurrences. In that case, the insured was a manufacturer of protective masks that were allegedly defective for not protecting users from asbestos exposures. The First District found the causation theory inapplicable to the exposures that caused injury in that case. *Id.* In so doing, the Court of Appeals noted that the case did not concern an isolated car accident, but rather "multiple asbestos claims spanning many years, over a broad geographic area, under a multitude of unrelated circumstances, and the injuries were caused by a plethora of different asbestos-related exposures." *Cincinnati Ins. Co.*, at ¶ 47. Therefore, rather than

applying the causation theory, which the Court of Appeals suggested would lead to an illogical outcome, the First District adopted the triggering-event theory discussed in *Babcock & Wilcox Co. v. Arkwright-Boston Mfg. Mut. Ins. Co.*, 53 F.3d 762 (6th Cir. 1995). In *Babcock*, the federal court held, in an asbestos case, that the event that triggered liability was "exposure to asbestos, not a more remote cause such as Babcock's decision to use asbestos or its failure to warn." *Id.* at 769.

{¶51} The decision of the First District Court of Appeals in *Cincinnati Ins Co.*, holding that multiple underlying asbestos claims constituted multiple occurrences, was based not only on the "triggering-event" theory, but also on the policy language. Specifically, the First District noted that the policy defined "occurrence" to include "'injurious exposure to conditions' that cause bodily injury." *Cincinnati Ins. Co.* at ¶ 51. Based on that policy language, the Court of Appeals held that "under the explicit terms of the policy, there had been multiple occurrences because there had been multiple injurious exposures to conditions that had caused bodily injury." *Id.*

{¶52} Subsequently, in *William Powell Co. v. OneBeacon Ins. Co.*, 2016-Ohio-8124 (1st Dist.), *discretionary appeal not allowed*, 2008-Ohio-1279, the First District Court of Appeals reached a similar conclusion, holding that the "triggering-event theory" should be applied in an asbestos-exposure coverage dispute because the exposures were from different products, used in different manners, in different

worksites, in different temporal periods, and the insured's liability arose from multiple occurrences, with an occurrence constituting each individual claimant's exposure to asbestos. *Id.*

**{¶53}** We find the analyses of the First District in those cases, applying the "triggering event" theory to underlying asbestos claims such as those at issue here, to be well-reasoned and persuasive and, therefore, we adopt that test as the one applicable to the instant case.

**{¶54}** In this case, it is undisputed that the underlying asbestos claims have been brought against Copeland by a number of individual claimants located throughout the United States, who have alleged bodily injury resulting from exposure to asbestos in various Copeland-built products on numerous different job sites and other locations, during varying timeframes, and under a variety of conditions.

**{¶55}** As previously noted, the policies at issue here define "occurrence" as "an accident, including continuous or repeated *exposure* to conditions" resulting in bodily injury. (Emphasis added). Regarding the limits of liability coverage, the policies provide "[a]ll bodily injury, personal injury, property damage and advertising offense arising out of continuous or repeated *exposure* to substantially the same general conditions shall be considered as arising out of one occurrence." (Emphasis added). The use of the term "exposure" in those clauses defining

"occurrence" in the policies leads this Court to conclude that, pursuant to the policies, it is the exposure of an individual claimant to asbestos that is the triggering event for an occurrence.

{¶56} Therefore, while a single claimant's bodily injury arising out of continued or repeated exposure to asbestos under substantially the same general conditions would hypothetically constitute a single occurrence under the policy language, we find that the underlying asbestos claims in this case, to the extent those claims involve multiple claimants with differing exposures, constitute multiple occurrences pursuant to the policies.

{¶57} The second assignment of error is overruled.

*Conclusion*

{¶58} Having found no prejudicial error in the particulars assigned and argued by appellant, Travelers Casualty and Surety Company, the judgment of the trial court is affirmed.

***Judgment affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 17-25-11

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is  hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

Juergen A. Waldick, Judge

Mark C. Miller, Judge

John R. Willamowski, Judge

DATED:
/jlm

-24-